**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

|  |  |  |
|---|---|---|
| BRYNDI ZAZUETA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-2796 |
| | ) | |
| MEDICAL DATA SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant Medical Data Systems, Inc. ("MDS") by and through its undersigned counsel, and for its Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. 10) states as follows:

### I.   Introduction

The question at issue in Plaintiff's Motion for Partial Summary Judgment is very narrow and straight-forward—whether MDS improperly demanded payment from Plaintiff during a phone call on August 28, 2017.  By listening to the brief audio recording of the phone call, it should become readily apparent to the Court that no demand for payment was ever made during the phone call, much less an improper demand.  Moreover, Plaintiff has provided absolutely zero extrinsic evidence to support a finding that an unsophisticated consumer would reasonably be confused as to his or her dispute, validation, and verification rights.  Thus, Plaintiff's Motion for Partial Summary Judgment should be denied.

1

8816250v.1

## II.  Argument

As an initial matter, pursuant to this Court's case management order entered on January 11, 2018, discovery does not close in this case until July 17, 2018.  Thus, as stated in MDS's Response to Plaintiff's Statement of Uncontroverted Facts (attached hereto as Exhibit A), it has not completed discovery with respect to Plaintiff's claims and is not in a position to respond to many of the factual claims made by Plaintiff.  Nonetheless, based on the known facts, Plaintiff is clearly not entitled to partial summary judgment.

Plaintiff argues that MDS overshadowed Plaintiff's Section 1692g rights when it demanded Plaintiff pay the debt on three dates within the relevant dispute period.  In her motion and supporting memorandum, Plaintiff severely mischaracterizes the conversation that took place on the telephone.  MDS encourages the Court to listen to the complete audio recording of the phone call, which reveals that Plaintiff has not fairly described the call.  Moreover, the transcript of the phone call provided by Plaintiff is incomplete and inaccurate.  MDS has provided a true and complete transcript of the phone call in its Response to Plaintiff's Statement of Uncontroverted Facts.  *See* Exhibit A, Resp. to ¶ 8.

"A violation of the FDCPA is reviewed using the unsophisticated-consumer standard which is designed to protect consumers of below average sophistication or intelligence without having the standard ties to the very last rung on the sophistication ladder."  *Strand v. Diversified Collection Serv., Inc.,* 380 F.3d 316, 317 (8th Cir. 2004) (internal quotation marks and citation omitted).  The unsophisticated consumer standard "has an objective element of reasonableness, which protects debt collectors from liability for unrealistic or peculiar interpretations."  *Perry v. Trident Asset Mgmt., L.L.C.*, No. 4:14-CV-1004-SPM, 2015 WL 417588, at *5 (E.D. Mo. Feb. 2, 2015).  Mere speculation that statements from a debt collector confuses the unsophisticated

2

consumer is insufficient at the summary judgment stage, and when the statements do not plainly reveal that they would be confusing to a significant fraction of the population, the plaintiff must come forward with evidence beyond the statements themselves and her own self-serving assertions that the statements are confusing. *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14CV816 RWS, 2014 WL 6607197, at *3 (E.D. Mo. Nov. 19, 2014).  "[C]ourts have found no overshadowing where the debt collector requests payment but does not indicate that *payment must be made* before the expiration of the 30–day dispute window described in the validation notice." *Perry v. Trident Asset Mgmt., L.L.C.*, No. 4:14-CV-1004-SPM, 2015 WL 417588, at *7 (E.D. Mo. Feb. 2, 2015) (emphasis added).

After MDS sent the initial collection letter to Plaintiff that contained a proper validation notice, Plaintiff initiated the phone call to MDS.  Plaintiff has not alleged or argued that MDS made any efforts to collect payment from Plaintiff between the time the initial collection letter was sent until the time that Plaintiff phoned MDS.  During the call, the representative for MDS simply answers the questions being asked by Plaintiff.  The representative for MDS never unilaterally initiates any conversation with Plaintiff during the phone call about making a payment.  Not only does MDS not make any demand during the phone call, MDS does not even request payment.

The statements that Plaintiff argues constitute a "demand" are contained within the following portion of the transcript of the phone call:[1]

| | |
|---|---|
| **Plaintiff:** | **Okay, how much time do I have to take care of this?** |
| **MDS:** | **We could post date the payment, ma'am, if you'd like to go ahead and help you out with the account. That way it will stop all collection efforts.** |
| **Plaintiff:** | **Okay.  And what am I supposed to do to keep this off my credit?** |

---

[1] *See* Response to Paragraph 8 in Exhibit A for a full and complete copy of the transcript.  MDS submits that the statements in dispute should be considered in the context of the complete call, instead of in isolation.

3

**MDS:** **Well, what we can do to make it a zero balance, and it will show a zero balance on our system, is we can go ahead and post date the payment up till the 31st , or when do you need to do the payment until?**

**Plaintiff:** **Umm, I'm not quite sure yet.**

**MDS:** **Well, the farthest out I can do this is for September 14 if you're not able to do it this Friday, by this Friday, which is the 1st.  I can put it in for the 14th, $172.11.**

The above statements from the representative of MDS were made in response to Plaintiff's questions regarding how much time she has to take care of the debt and what she can do to keep the debt off of her credit.  At that point, believing that Plaintiff was asking how she could make a payment, MDS merely provided an option to post-date any payment that Plaintiff wished to make as a courtesy to her.  The dates mentioned by the MDS representative refer to how far out MDS could *post-date a payment* if Plaintiff wished to make a payment—never once does the MDS representative state or even infer that Plaintiff needs to make a payment by those dates.  The MDS representative does not demand that Plaintiff make any payment, and certainly never demands that Plaintiff make a payment within a certain time.

 In fact, after offering to post-date a payment for Plaintiff, MDS asks her, "or when do you need to do the payment until?" making an open-ended request for Plaintiff to let MDS know how long she needs to make a payment.[2]  This inquiry about how much time the Plaintiff needs to make a payment is wholly inconsistent with Plaintiff's argument that a demand for payment was made.

Nothing about the MDS representative's statements is in conflict with Plaintiff's right to dispute the debt within the 30-day period.  Notably, the alleged statements do not include any demand for immediate payment or payment prior to the expiration of the 30-day period and did

---

[2] In her supporting memorandum, Plaintiff truncates the end of the statement from the MDS representative containing the inquiry for how much time Plaintiff needed to pay.

not threaten negative consequences if payment was not made within the 30-day dispute period. *See Perry v. Trident Asset Mgmt., L.L.C.*, No. 4:14-CV-1004-SPM, 2015 WL 417588, at *7 (E.D. Mo. Feb. 2, 2015); *Jenkins v. Union Corp.*, 999 F.Supp. 1120, 1133 (N.D. Ill. 1998) (finding no overshadowing where "statements do not demand payment—or any other action, for that matter—immediately or within a certain time frame"); *Rumpler v. Phillips & Cohen Associates, Ltd.*, 219 F.Supp.2d 251, 259 (E.D.N.Y. 2002) (finding no overshadowing where no demand for immediate payment and no threat of adverse consequences in the event the debt is not paid within 30 days). Instead, the alleged statements merely offered to post-date a payment made by Plaintiff if she needed additional time to pay. Absolutely no threats, whether direct or implied, are made by the MDS representative of adverse consequences in the event that Plaintiff fails to pay the debt within the 30-day validation period. Moreover, the audio recording of the phone call reveals that the MDS representative was polite, helpful, and non-threatening. Nothing about the phone call was abusive, domineering, persuasive or demanding.

As stated in *Perry*, "there is nothing confusing, inconsistent, or contradictory about information a consumer that she 'can' make payments on a debt" because "*any* consumer who is aware that she has a debt is already aware that she 'can' make payments on the debt and that the debt collector would like her to do so." 2015 WL 417588, at *8. The validation period is not a grace period and a debt collector is allowed to continue collection activity as long as the consumer has not disputed the debt in writing. *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14-cv-816-RWS, 2014 WL 6607197, at *4 (E.D. Mo. Nov. 19, 2014). Here, Plaintiff did not dispute the debt in writing. It would be patently unreasonably to hold that a debt collector who responds to an unsolicited question from a debtor, "how can I take care of this debt?" with an answer that the debtor can pay the debt, is in violation of the FDCPA for overshadowing the

5

Section 1692g validation notice.  Plaintiff reveals in the phone call that she had already retained a lawyer to represent her with respect to that debt, but she does not inform MDS of that fact until the end of the phone call after she has asked questions to MDS (likely at her lawyer's direction) with the probable goal of provoking MDS to make a statement that she could subsequently claim violated the FDCPA.

Finally, Plaintiff has presented no evidence (other than her own self-serving assertions) to support a finding that the statements made during the phone call would reasonably confuse or deceive an unsophisticated consumer as to her dispute, validation, and verification rights.  *See Tilatitsky v. Medicredit, Inc.*, No. 4:16-cv-00811-JCH, 2016 WL 5906819, *4 (E.D. Mo. Oct. 11, 2016); *Founie v. Midland Credit Mgmt., Inc.*, No. 4:14CV816 RWS, 2014 WL 6607197, at *4 (E.D. Mo. Nov. 19, 2014) ("Founie offers nothing more than her own self-serving assertions that the letter confused her, and she has presented no affirmative or extrinsic evidence whatsoever that the letter would reasonably confuse an "unsophisticated consumer" as to the payment due date or her dispute rights").

### III. Conclusion

Plaintiff's attempt to manufacture a violation of the FDCPA with a wildly inaccurate characterization of a phone call with MDS should be rejected by this Court.  The audio of the phone call demonstrates that MDS did not demand payment to be made within the validation period, and Plaintiff has presented no evidence showing that an unsophisticated consumer would be confused or deceived by the statements made in the phone call.  Therefore, the Court should deny Plaintiff's Motion for Partial Summary Judgment.

6

8816250v.1

Dated: February 14, 2018

By:     */s/ Jason D. Johnson*
Daniel E. Tranen, #48585 (MO)
Jason D. Johnson, #58209 (MO)
Wilson Elser Moskowitz
Edelman & Dicker LLP
101 West Vandalia Street Suite 220
Edwardsville, IL 62025
618-307-0200 (Phone)
618-307-0221 (Fax)
daniel.tranen@wilsonelser.com
jason.johnson@wilsonelser.com

*Attorneys for Defendant*
*Medical Data Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2018, the foregoing document was electronically

filed with the above-captioned court, and counsel for Plaintiff was served with this document via

the Court's electronic filing system.


By: /s/ *Jason D. Johnson*

7

8816250v.1